**Safwat KAMEL, Appellant,**

v.

**UNIVERSITY OF TEXAS HEALTH SCIENCE CENTER AT HOUSTON, Appellee.**

No. 01–09–00163–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Oct. 21, 2010.

Rehearing Overruled Nov. 17, 2010.

Ashton Christopher Adair, Houston, TX, for Appellant.

Kamilla Lane Stokes, Assistant Attorney General, Tort Litigation Division, Austin, TX, Philip A. Lionberger, Assistant Solicitor General, Houston, TX, for Appellee.

Panel consists of Justices KEYES, HIGLEY, and BLAND.

## OPINION

EVELYN V. KEYES, Justice.

In this medical malpractice case, appellant, Safwat Kamel, appeals from the trial court's grant of appellee University of Texas Health Science Center at Houston's ("UTHSCH's") plea to the jurisdiction. In four issues, Kamel argues that (1) the trial court abused its discretion in granting UTHSCH's plea to the jurisdiction because no fact issue remained regarding whether Kamel's claim was based upon an employee of UTHSCH's use or misuse of tangible personal property, as required by the Texas Tort Claims Act (TTCA)[1] for waiver of a governmental entity's immunity; (2) he properly pleaded that UTHSCH waived its immunity under the TTCA and no fact issue exists regarding the trial court's jurisdiction over UTHSCH; (3) the trial court was bound by its previous ruling dismissing with prejudice Kamel's claims against UTHSCH's employee; and (4) the trial court's rulings violated "the Open Courts Provisions" of the Texas Constitution.

We affirm.

## Background

On June 26, 2005, Kamel visited Lyndon B. Johnson General Hospital complaining of an enlarged testicle. Dr. Run Wang and Dr. Tiffany Sotelo diagnosed him with a hydrocele, or accumulation of fluid around the testicle, and epididymitis, or inflammation of the epididymis, of the right testicle and recommended surgery. On July 8, 2005, Dr. Wang and Dr. Tiffany performed the hydrocelectomy, or removal of the hydrocele, with Kamel's consent. During the surgery, Dr. Wang determined that the testicle "looked very abnormal" and he became concerned that, given Kamel's previous history of colon cancer, the cancer had metastasized to the testicle.

Dr. Wang removed the testicle. He used various surgical instruments to remove Kamel's testicle, including scissors, hemostats, and sutures. Subsequent testing revealed that Kamel did not have cancer in his testicle.

On June 9, 2006, Kamel sued Dr. Sotelo, Dr. Wang, and Lyndon B. Johnson General Hospital for medical malpractice. Dr. Wang moved for dismissal from the suit pursuant to section 101.106(f) of the TTCA. Dr. Wang argued that Kamel's claims against him should be dismissed because Kamel "has filed this cause of action against [Dr. Wang] alleging conduct that is within the general scope of his employment with [UTHSCH]" and that "this case could have been brought against [UTHSCH]."

Kamel responded to Dr. Wang's motion to dismiss, arguing that Dr. Wang did not adequately establish that he was an employee of a governmental entity as defined by the TTCA and that Dr. Wang did not meet "the second prong of his burden for dismissal in that he has not shown how this Cause could have been brought against his alleged government employer as required for a Motion to Dismiss pursuant to [TTCA, section] 101.106(f)." Kamel's response also included a request for leave to file an amended petition "[i]n the event that the Court will Grant [Dr. Wang's] Amended Motion to Dismiss."

Dr. Wang replied, arguing, "Of note, Plaintiff's Original Petition alleges sufficient facts to find a waiver of immunity based on the use and misuse of tangible personal property. The underlying basis of Plaintiff's claims against Dr. Wang relate to the use or misuse of tangible real property, namely surgical instruments that were used to remove his right testicle." Dr. Wang argued that Kamel's claims all

---

1. *See* TEX. CIV. PRAC. & REM.CODE ANN. §§ 101.001–.109 (Vernon 2005).

related to the removal of his testicle, that the "testicle was removed by using a scalpel and other surgical instruments," that "Dr. Wang's direct use of these surgical instruments ... caused the removal" of Kamel's testicle, and that Kamel's injury "was immediate[ly] and directly caused by the use (or misuse) of the surgical instruments," and, thus, UTHSCH's sovereign immunity was waived under section 101.021(2).

Kamel moved to dismiss Dr. Wang and to amend his pleadings to replace Dr. Wang with UTHSCH "pursuant to [TTCA section] 101.106(f)." The trial court granted Kamel's motion to dismiss and Kamel subsequently filed his second amended petition dismissing Dr. Wang from the suit and adding UTHSCH as a defendant. Accordingly, no hearing was held on Dr. Wang's motion to dismiss and the trial court did not sign an order addressing that motion. Kamel also dismissed Lyndon B. Johnson General Hospital from the suit.

On January 31, 2007, Dr. Sotelo filed a motion to dismiss pursuant to sections 101.106(a) and (f) of the TTCA.[2] The trial court granted her motion to dismiss without stating which ground it relied upon. The trial court severed the claims against Dr. Wang and Dr. Sotelo and issued final judgments. Kamel appealed the dismissal

of Dr. Sotelo to this Court, arguing that dismissal of Dr. Sotelo was inappropriate because Dr. Sotelo was not an employee of a governmental entity for purposes of section 101.106. *Kamel v. Sotelo*, No. 01–07–00366–CV, 2009 WL 793742, at *1 (Tex. App.-Houston [1st Dist.] Mar. 26, 2009, no pet.) (mem.op.). We affirmed the dismissal of Dr. Sotelo, holding that she was an employee of a governmental entity for purposes of the TTCA.[3] *Id.* at *5.

UTHSCH filed its second amended plea to the jurisdiction, arguing that it was a state entity that is immune from suit and that Kamel's claims did not fall within the waiver of immunity under the TTCA.

Kamel's third amended petition, the live pleading, alleged that UTHSCH was liable because Dr. Wang and Dr. Sotelo "negligently used tangible personal property, namely a scalpel, scissors, and/or other surgical instruments to negligently injure plaintiff by injuring and removing plaintiff's right testicle. Such removal was negligent in that the removal was a breach of the standard of care owed to plaintiff." It also alleged that "Wang failed to obtain the appropriate consent"; that Dr. Wang failed to disclose "that [Kamel] may [lose] his testicle as a risk of the procedure"; and that "a reasonable and prudent physi-

**2.**
 Section 101.106(a) provides that "[t]he filing of a suit under this chapter against a governmental unit constitutes an irrevocable election by the plaintiff and immediately and forever bars any suit or recovery by the plaintiff against any individual employee of the governmental unit regarding the same subject matter." Tex. Civ. Prac. & Rem.Code Ann. § 101.106(a).
 Section 101.106(f) provides that "[i]f a suit is filed against an employee of a governmental unit based on conduct within the general scope of that employee's employment and if it could have been brought under this chapter against the governmental unit, the suit is considered to be against the employee in the employee's official capacity only. On the em-

ployee's motion, the suit against the employee shall be dismissed unless the plaintiff files amended pleadings dismissing the employee and naming the governmental unit as defendant on or before the 30th day after the date the motion is filed." *Id.* § 101.106(f).

**3.** The opinion of this Court referred specifically to section 101.106(f) and did not discuss 101.106(a). We stated, "Sotelo moved for a dismissal under subsections (a) and (f) of section 101.106 of the Texas Tort Claims Act. Because we find the application of section 101.106(f) to be dispositive, we address it solely." *Kamel v. Sotelo*, No. 01–07–00366–CV, 2009 WL 793742, at *2 (Tex.App.-Houston [1st Dist.] 2009, no pet.).

cian would not have removed Mr. Kamel's testicle unless there was a medical necessity and/or would not have removed Mr. Kamel's testicle without obtaining the proper informed consents and/or would not have further injured Mr. Kamel's testicle as a result of the intended hydrocele procedure."

On December 3, 2008, the trial court granted UTHSCH's plea and dismissed Kamel's claims for lack of jurisdiction. This appeal followed.[4]

## Analysis

In his first issue, Kamel argues that the trial court erred in granting UTHSCH's plea to the jurisdiction.

### A. Standard of Review

 A plea to the jurisdiction challenges the trial court's subject-matter jurisdiction to hear the case. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex.2000). Subject-matter jurisdiction is essential to the authority of a court to decide a case and is never presumed. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443–44 (Tex.1993). The existence of subject-matter jurisdiction is a question of law that we review de novo. *State Dep't of Highways & Pub. Transp. v. Gonzalez*, 82 S.W.3d 322, 327 (Tex.2002).

 The plaintiff has the burden to allege facts affirmatively demonstrating that the trial court has subject-matter jurisdiction. *Tex. Ass'n of Bus.*, 852 S.W.2d at 446. We must construe pleadings in favor of the plaintiff and look to their intent, and we are required to construe the allegations in favor of jurisdiction unless, on its face, the petition affirmatively demonstrates a lack of jurisdiction. *Arnold v. Univ. of Tex. Sw. Med. Ctr. at Dallas*, 279 S.W.3d 464, 467 (Tex.App.-Dallas 2009, no pet.). When a plea to the jurisdiction challenges the existence of jurisdictional facts, the trial court must consider relevant evidence submitted by the parties. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 227 (Tex.2004). If the evidence creates a fact question regarding jurisdiction, the trial court cannot grant the plea to the jurisdiction, and the fact issue will be resolved by the fact finder; however, if the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea as a matter of law. *Id.* at 227–28. In deciding a plea to the jurisdiction, a court may not consider the merits of the case, but only the plaintiff's pleadings and the evidence pertinent to the jurisdictional inquiry. *County of Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex.2002). In conducting our review, we take as true all evidence favorable to the nonmovant and indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Miranda*, 133 S.W.3d at 228.

### B. Waiver of UTHSCH's Immunity Under Texas Tort Claims Act

 Sovereign immunity deprives a trial court of subject-matter jurisdiction in lawsuits against the state or certain governmental units unless the state consents to suit.[5] *Id.* at 224. It is undisputed that UTHSCH is a governmental entity. The

---

4. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(a)(8) (Vernon 2005) (allowing interlocutory appeal of grant or denial of plea to jurisdiction of governmental unit).

5. The terms "sovereign immunity" and "governmental immunity" are often used interchangeably even though they involve two distinct concepts. Sovereign immunity refers to the State's immunity from suit and liability. Governmental immunity refers to the immunity of political subdivisions of the State. *See Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 694 n. 3 (Tex.2003). For the sake of simplicity, we use the term sovereign immunity.

TTCA provides a limited waiver of governmental liability from suit. TEX. CIV. PRAC. & REM.CODE ANN. § 101.021 (Vernon 2005).

### 1. Waiver provision of Section 101.021

Section 101.021 provides:

A governmental unit in the state is liable for:

(1) property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment if:

 (A) the property damage, personal injury, or death arises from the operation or use of a motor-driven vehicle or motor-driven equipment; and

 (B) the employee would be personally liable to the claimant according to Texas law; and

(2) personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law.

TEX. CIV. PRAC. & REM.CODE ANN. § 101.021. Thus, to come within this limited exception, Kamel must allege that his personal injury was proximately caused by the use of tangible personal property. See Dallas County Mental Health & Mental Retardation v. Bossley, 968 S.W.2d 339, 342–43 (Tex.1998); see also Dallas Area Rapid Transit v. Whitley, 104 S.W.3d 540, 542–43 (Tex.2003) (requiring nexus between use of tangible property and plaintiff's injuries).

Kamel relies on Salcedo v. El Paso Hospital District, 659 S.W.2d 30 (Tex.1983) and its progeny. In Salcedo, the patient was examined for severe chest pains. Id. at 31. An electrocardiogram test conducted in the emergency room showed a classic pattern of heart attack, but the patient was released and later died of a heart attack. Id. His widow sued and alleged that the hospital misused the electrocardiograph by improperly reading and interpreting the results it produced. Id. The Texas Supreme Court held that "an allegation of defective or inadequate tangible property" was not necessary to state a cause of action under the TTCA as it existed at that time "if 'some use' of the property, rather than 'some condition' of the property, is alleged to be a contributing factor of the injury." Id. at 32 (noting that statute required that provisions of act be liberally construed to achieve its purpose and stating, "To hold that the Act requires an allegation of defective or inadequate property when such an allegation is neither expressly nor impliedly required by section 3 would place a restrictive interpretation on the 'condition or use' language" which would violate legislative mandate to liberally construe act's provisions). The supreme court concluded that Salcedo had alleged that her loss was proximately caused by the negligence of the emergency room employees in using tangible personal property and thus the hospital had waived sovereign immunity. Id. at 32–33.

Other courts have used the reasoning in Salcedo to find waiver of immunity under section 101.021(2). See Robinson v. Cent. Tex. MHMR Ctr., 780 S.W.2d 169, 170–71 (Tex.1989) (applying Salcedo in determining that plaintiff stated cause of action waiving immunity by alleging that MHMR's failure to provide life preserver to patient known to suffer epileptic seizures that caused him to lose consciousness led to patient drowning at lake while under MHMR's care); Univ. of Tex. Med. Branch Hosp. at Galveston v. Hardy, 2 S.W.3d 607, 609–10 (Tex.App.-Houston [14th Dist.] 1999, pet. denied) (holding that hospital had waived immunity where wrongful death plaintiff asserted that hospital staff failed to properly oversee cardiac monitor and concluding that use of cardiac monitor, like EKG in Salcedo, directly affected and impacted person whose heart

condition was being monitored); *Tejada v. Rowe,* 207 S.W.3d 920, 925 (Tex.App.-Beaumont 2006, pet. filed) (holding that use of drug and forceps in delivery of baby who ended up suffering from cerebral palsy was use of tangible property establishing that claim could have been brought against hospital as governmental entity under TTCA).

However, the supreme court later specifically limited its holding in *Salcedo* to the particular facts of that case. *Bossley,* 968 S.W.2d at 342 (noting that waiver of immunity in *Salcedo* arose from entity's misuse of electrocardiograph). Furthermore,

> When *Salcedo* was decided [in] 1983, the [TTCA] provided for waiver of sovereign immunity for "death of personal injuries so caused from *some* condition or *some* use of tangible property.... (Emphasis added). At the time, the [TTCA] also provided, "[t]he provisions of this Act shall be liberally construed to achieve the purposes thereof." However, when the Legislature codified the [TTCA] and adopted the Texas Civil Practice and Remedies Code in 1985, two years after *Salcedo,* the word "some" was deleted preceding "condition" and "use." Additionally, the mandate for liberal construction of provisions of the [TTCA] was repealed and not carried forward in the codification.

*Texas Tech Univ. Health Sci. Ctr. v. Ward,* 280 S.W.3d 345, 349–50 (Tex.App.-Amarillo 2008, pet. denied) (citing Act of May 28, 1983, 68th Leg., R.S., ch. 530, § 1, 1983 Tex. Gen. Laws 3084, 3085, Act of May 14, 1969, 61st Leg., R.S., ch. 292, § 13, 1969 Tex. Gen. Laws 874, 877, and Act of May 17, 1985, 69th Leg., R.S., ch. 959, § 1, 1985 Tex. Gen. Laws 3242, 3303).

More recent opinions of the supreme court have limited the waiver of immunity under 101.021(2). In *University of Texas Medical Branch at Galveston v. York,* 871 S.W.2d 175 (Tex.1994), the plaintiff alleged that UTMB misused tangible personal property by failing to note the patient's fall and other observations regarding his care in his medical records. *Id.* at 176. The supreme court noted that the codified version of the TTCA eliminated the provision requiring liberal construction and instead called for construction under the general rules of statutory construction. *Id.* at 177 & n. 3. The court held that information recorded in a patient's medical records was not tangible personal property, and, thus, York failed to allege a claim that waived immunity because he did not allege misuse of any hospital device or equipment. *Id.* at 178–79 ("[I]nformation, which may or may not be recorded in a patient's medical records, does not constitute tangible personal property under section 101.021(2) of the [TTCA] and [thus] the State has not waived governmental immunity for negligence involving the use, misuse, or nonuse of information in a patient's medical records.").

In *Dallas County Mental Health & Mental Retardation v. Bossley,* 968 S.W.2d 339 (Tex.1998), a mental patient escaped through unlocked doors from a mental hospital and committed suicide by throwing himself in front of a truck, and his parents sued, claiming that the patient's death was caused by the unlocked doors, and thus Dallas County MHMR waived its liability under section 101.021(2). *Id.* at 340–41. The supreme court held that:

> Section 101.021(2) states that for immunity to be waived, personal injury or death must be proximately caused by a condition or use of tangible personal or real property. The requirement of causation is more than mere involvement, although exactly how much more has been difficult for courts to define. If only involvement were required, the waiver of immunity would be virtually unlimited, since few injuries do not

somehow involve tangible personal or real property. Requiring only that a condition or use of the property be involved would conflict with the [TTCA's] basic purpose of waiving immunity only to a limited degree.

*Id.* at 342–43. The court also held that "[p]roperty does not cause injury if it does no more than furnish the condition that makes the injury possible." *Id.* at 343. The court concluded that while the unlocked doors permitted the patient's escape, they did not cause his death, and thus the nexus between the use or condition of the doors and the patient's death was too attenuated to constitute a waiver of immunity. *Id.*

In *Texas Department of Criminal Justice v. Miller*, 51 S.W.3d 583 (Tex.2001), an inmate was treated for nausea and severe headaches by the administration of various medications and other treatments before he was diagnosed with meningitis and died of that illness. *Id.* at 585. His widow claimed that his death was caused by the misuse of tangible property because the staff improperly administered medication and misused certain medical equipment. *Id.* The supreme court noted:

> There cannot be waiver of sovereign immunity in every case in which medical treatment is provided by a public facility. Doctors in state medical facilities use some form of tangible personal property nearly every time they treat a patient. If there is waiver in all of those cases, the waiver of immunity is virtually unrestricted, which is not what the Legislature intended.

*Id.* at 588 (internal quotations and citations omitted). The court stated that while TDCJ did "use" various drugs and medical equipment in treating the inmate, it is not sufficient for waiver purposes "that some property is merely involved .... Using that property must have actually caused the injury." *Id.* The court concluded that the property used on the inmate here might have furnished the condition that made his injury possible, but they did not hurt the inmate or make him worse in and of themselves. *Id.*

Several intermediate courts of appeals have followed these more recent cases in limiting *Salcedo* and its progeny. *See Anderson v. City of San Antonio*, 120 S.W.3d 5, 6–9 (Tex.App.-San Antonio 2003, pet. denied) (holding there was no waiver when EMTs performed two electrocardiogram tests, determined patient did not need further care, and patient later died of heart attack, because patient's death was caused by cardiac condition and EMT's negligence, not by use of electrocardiogram machine); *Kelso v. Gonzales Healthcare Sys.*, 136 S.W.3d 377, 380–82 (Tex. App.-Corpus Christi 2004, no pet.) (holding that allegations that injuries were caused by misuse of EKG machine did not fall within waiver provisions of TTCA because plaintiff had not made affirmative allegation that EKG machine was incorrectly used or that its results were erroneous and reasoning that misuse of information produced by EKG machine caused injuries rather than device itself); *Ward*, 280 S.W.3d at 356 (holding that alleged misuse of fetal heart monitor was not sufficient to waive immunity because plaintiffs "did not allege that the monitor was incorrectly used or that its results were erroneous" but rather alleged that hospital employees failed to recognize and respond to results of heart monitoring, "which are allegations of misuse of information and negligence by medical staff"; court held that plaintiffs "failed to establish a nexus between use of the monitor and the stillborn birth of their child" because evidence indicated that cause of death was a knot in umbilical cord).

Specifically, the Dallas Court of Appeals has recently addressed waiver of immunity

under section 101.021(2) in the context of a breast implant replacement surgery. *Arnold*, 279 S.W.3d at 467. The appellants in *Arnold* alleged that the doctor who performed the allegedly negligent surgery "failed to make the proper pre-surgery investigation and arrangements," that the doctor failed to receive informed consent, and that the negligent use of breast implants resulted in and proximately caused damages and injuries, including deforming the patient's breasts and requiring additional surgery. *Id.* at 468–70. The Dallas court concluded that the plaintiff's claims that the doctor failed to properly investigate or respond to post-surgery concerns were "alleged errors in medical judgment" and held that "[e]rrors in medical judgment do not waive immunity under the TTCA." *Id.* at 469 (citing *Miller*, 51 S.W.3d at 589). It also concluded that "[f]ailure to receive informed consent [does] not waive immunity under the TTCA." *Id.* (citing *Mitcham v. Univ. of Tex. Med. Branch of Galveston*, 818 S.W.2d 523, 525 (Tex.App.-Houston [14th Dist.] 1991, writ denied)) (holding there was no waiver when plaintiff alleged that doctor inserted arteriogram needle into her femoral artery without receiving informed consent because plaintiff did not argue that any condition of needle was defective or that needle was actually used in negligent manner, but allegations instead focused on physician's negligence in informing plaintiff of risks).

Finally, the court in *Arnold* examined the plaintiff's specific allegations that the breast implants themselves caused her injuries. *Id.* at 470. The court recognized that we must focus "on the true nature of disputes rather than allowing artful pleading to gain favorable redress under the law." *Id.* (citing *Baylor Univ. v. Sonnichsen*, 221 S.W.3d 632, 636 (Tex.2007) and *Ambulatory Infusion Therapy Specialist, Inc. v. N. Am. Adm'rs, Inc.*, 262 S.W.3d 107, 112 (Tex.App.-Houston [1st Dist.]

2008, no pet.)). The court thus focused "on the true nature of the dispute between the Arnolds and appellee to determine whether their claims are a disguised attempt to plead around the TTCA." *Id.* The court noted that the Arnolds made "no allegation that the implants themselves were defective in any way or used in a negligent manner. Rather, any alleged negligence and resulting damages, despite their attempts to bring their cause of action under the waiver statute, was the result of medical decisions by [the doctor]." *Id.* It concluded that because the true nature of the Arnolds' complaint was that the doctor made an error in medical judgment, "the fact that the pleadings also identify a piece of tangible personal property used during the procedure" does not make their claim one that falls within the waiver provision of 101.021(2). *Id.*

2. *Application of Section 101.021(2) to Kamel's Claims*

 In his third amended petition, Kamel alleged that, through Dr. Wang and Dr. Sotelo, UTHSCH was negligent as follows:

- Doctors "negligently used tangible personal property, namely a scalpel, scissors, and/or other surgical instruments" to injure and remove his testicle, and a "reasonable and prudent physician would not have removed [Kamel's] testicle unless there was a medical necessity," would have obtained consent, and would not have "further injured [Kamel's] testicle as a result of the intended hydrocele procedure";

- Dr. Wang failed to obtain the appropriate consent before removing the testicle and failed to inform Kamel of his "true physical state before and after treatment";

- Dr. Wang and Dr. Sotelo negligently failed to completely disclose the risks

and hazards posed by the hydrocelectomy;

- Dr. Wang negligently supervised and advised Dr. Sotelo as she performed the hydrocelectomy;
- Dr. Sotelo failed to perform the medical treatment necessary;
- Dr. Sotelo failed to "recognize and/or acknowledge her recognition of [Kamel's] symptoms that resulted from her negligent use of personal tangible property during treatment; and
- Dr. Sotelo failed to use acceptable practices to limit the likelihood and probability of infection following treatment.

As in *Arnold*, Kamel's claims regarding failure to disclose risks and to receive informed consent do not fall within the waiver provision of the TTCA. *See id.* at 469 ("Failure to receive informed consent [does] not waive immunity under the TTCA." (citing *Miller*, 51 S.W.3d at 589)). Likewise, Kamel's claims of negligent supervision, failure to perform the necessary medical treatment, and failure to use acceptable practices to limit infection are claims for errors in medical judgment or general medical negligence and do not involve the use of tangible property. Therefore, those claims do not fall within the waiver in section 101.021(2). *See id.; see also Hall v. Provost*, 232 S.W.3d 926, 928 (Tex.App.-Dallas 2007, no pet.) (holding that general medical malpractice claims do fall with waiver provision of TTCA).

Finally, Kamel contends that the doctors' use of surgical instruments was the actual cause of his injury. Like the court in *Arnold*, we must focus on the true nature of the dispute between Kamel and UTHSCH to determine whether his claims are an attempt to artfully plead around the requirements of the TTCA. *See Arnold*, 279 S.W.3d at 470. Just as in *Arnold*, Kamel has made no claim that the surgical instruments themselves were defective in any way or that they were used in a negligent manner. Rather, the crux of Kamel's argument is that Dr. Wang made an erroneous medical judgment in determining that Kamel's testicle needed to be removed. The fact that tangible personal property was used during the procedure conducted as a result of the allegedly erroneous judgment does not establish that the use of the surgical instruments itself was the proximate cause of Kamel's injury, and, thus, these allegations do not fall within the limited waiver in section 101.021(2). *See id.* (holding that errors in medical judgment do not provide waiver of immunity under TTCA); *see also Miller*, 51 S.W.3d at 588 (recognizing that every use of medical equipment cannot constitute waiver because doctors almost always use medical equipment in treating patients); *Bossley*, 968 S.W.2d at 342–43 (holding that use of tangible property must be proximate cause of injury and that "[p]roperty does not cause injury if it does no more than furnish the condition that makes the injury possible").

We overrule Kamel's first issue.

## C. Trial Court's Previous Ruling on Dr. Sotelo's Motion to Dismiss under Section 101.106

In his second issue, Kamel argues that he properly pleaded that UTHSCH waived its immunity under the Texas Tort Claims Act and no fact issue exists regarding the trial court's jurisdiction over UTHSCH. In his third issue, Kamel argues that the trial court was bound by its previous ruling dismissing with prejudice Kamel's claims against Dr. Sotelo, UTHSCH's employee. Specifically, he argues that the trial court's grant of UTHSCH's plea to the jurisdiction is erroneous because the trial court and this Court "previously ruled ... that Dr. Tiffany Sotelo was an employee of defendant UTHSCH during the rele-

vant times herein, and that [Kamel's] claims against her can *only* be brought against defendant UTHSCH by virtue of that employment and the [TTCA section] 101.106." Thus, Kamel is arguing that the trial court had to have determined that it had jurisdiction over UTHSCH in order to dismiss Dr. Sotelo, and he asserts that he "was forced to substitute" UTHSCH as a defendant for Dr. Wang and Dr. Sotelo. However, these assertions are not supported by the record.

■■■■ Dr. Wang moved for dismissal under section 101.106(f), which is part of the TTCA Election of Remedies provision. Section 101.106(f) provides:

> If a suit is filed against an employee of a governmental unit based on conduct within the general scope of that employee's employment and if it could have been brought under this chapter against the governmental unit, the suit is considered to be against the employee in the employee's official capacity only. On the employee's motion, the suit against the employee shall be dismissed unless the plaintiff files amended pleadings dismissing the employee and naming the governmental unit as defendant on or before the 30th day after the date the motion is filed.

TEX. CIV. PRAC. & REM.CODE ANN. § 101.106(f). "Therefore, to be entitled to dismissal under section 101.106(f), a defendant must show the plaintiff's suit (1) was based on conduct within the general scope of the defendant's employment with a governmental unit and (2) could have been brought under the [TTCA] against the governmental unit." *Hall*, 232 S.W.3d at 928 (citing TEX. CIV. PRAC. & REM.CODE ANN. § 101.106(f) and *Phillips v. Dafonte*, 187 S.W.3d 669, 675 (Tex.App.-Houston [14th Dist.] 2006, no pet.)). The movant employ-

ee bears the burden of proving that the suit could have been brought under the TTCA against a governmental unit. *See id.* General medical malpractice claims are not encompassed by the TTCA's limited waiver of sovereign immunity. *Id.*

However, Dr. Wang was never required to make any such showing and the trial court never ruled that he had done so because Kamel voluntarily amended his pleadings removing Dr. Wang as a defendant and adding UTHSCH. Thus, Kamel's case is distinguishable from one in which the employee must satisfy the burden of proving both prongs under 101.106(f).[6] *See Hintz v. Lally*, 305 S.W.3d 761, 767 (Tex.App.-Houston [14th Dist.] 2009, pet. denied) (holding plaintiff's voluntary dismissal of doctor distinguishes case from circumstances in which trial court is presented with motion under 101.106(f) and must address the "could have been brought under this chapter" clause in course of deciding whether to grant or deny motion).

■■■ After Kamel amended his pleadings adding UTHSCH, Dr. Sotelo moved for dismissal, arguing that she was entitled to dismissal under 101.106(a) or, alternatively, under 101.106(f). Section 101.106(a) provides:

> The filing of a suit under this chapter against a governmental unit constitutes an irrevocable election by the plaintiff and immediately and forever bars any suit or recovery by the plaintiff against any individual employee of the governmental unit regarding the same subject matter.

TEX. CIV. PRAC. & REM.CODE ANN. § 101.106(a). The trial court dismissed Dr. Sotelo from the suit without stating

---

6. Although Kamel alleges he was "forced" to substitute, nothing in the record supports this statement. There is no ruling by the trial court or record of any hearing indicating that Dr. Wang's motion was or would soon be granted.

which provision it relied on. Dr. Sotelo could have been properly dismissed under section 101.106(a) because Kamel's addition of UTHSCH as a defendant constituted an "irrevocable election" that barred "any suit or recovery ... against any individual employee of the governmental unit." *See id.; see also Hintz*, 305 S.W.3d at 769 (holding plaintiff's election to sue entity foreclosed any possibility of adding employee in future pleadings); *Villasan v. O'Rourke*, 166 S.W.3d 752, 759 (Tex.App.-Beaumont 2005, pet. denied) ("[W]hen TTCA claimants elect to include the governmental unit as a party to a suit, whether alone or in conjunction with a governmental employee, TTCA claimants have made an irrevocable election of remedies that they will look solely to the governmental unit for compensation for injury."). Thus, the trial court's ruling dismissing Dr. Sotelo from the suit did not constitute a ruling by the trial court that Kamel's claims could have been brought against UTHSCH under the TTCA.

Nor does the opinion of this Court on Kamel's appeal of Dr. Sotelo's dismissal constitute a ruling that his claims could have been brought against UTHSCH under the TTCA. The only question that our opinion in *Kamel v. Sotelo* addressed was whether Dr. Sotelo was considered an "employee" of a governmental entity, in this case, UTHSCH, for purposes of section 101.106. We determined that she was an employee, a determination that was necessary to support either ground for dismissal under section 101.106. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 101.106(a), (f).

We overrule Kamel's second and third issues.

## D. Open Courts

In his fourth issue, Kamel contends that the dismissal of his claims against Dr. Sotelo combined with the subsequent dis-

missal of his claims against UTHSCH violates the open courts provision of the Texas Constitution.

 "The open courts provision states that '[a]ll courts shall be open, and every person for an injury done him, in his lands, goods, person or reputation, shall have remedy by due course of law.'" *Hintz*, 305 S.W.3d at 772 (quoting TEX. CONST. art. I, § 13). "This provision, among other things, prohibits the Legislature from unreasonably restricting common law causes of action." *Id.* (quoting *Thomas v. Oldham*, 895 S.W.2d 352, 357 (Tex.1995)). When challenging a statute as unconstitutional under the open courts provision, the plaintiff must first demonstrate that the statute restricts a well-recognized common law cause of action. *Id.* (citing *Flores v. Law*, 8 S.W.3d 785, 787 (Tex.App.-Houston [1st Dist.] 1999, pet. denied)); *see also Thomas*, 895 S.W.2d at 357.

 Because the open courts provision affects common law claims and not statutory claims, the provision does not apply to claims under the TTCA. *Villasan*, 166 S.W.3d at 766; *see also Thomas*, 895 S.W.2d at 357–58 (holding predecessor to section 101.106 did not violate open courts provision because TTCA "broadened, rather than restricted, an injured party's remedies" because municipalities performing governmental functions were completely immune from liability under common law); *Hintz*, 305 S.W.3d at 772–73 (holding current version of section 101.106(f) does not violate open courts provision).

We overrule Kamel's fourth issue.

## Conclusion

We affirm the judgment of the trial court.