**Opinion issued August 30, 2012**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-11-01105-CV

————————————

**THE UNIVERSITY OF TEXAS MEDICAL BRANCH AT GALVESTON,**
**Appellant**

**V.**

**LOLA TATUM, INDIVIDUALLY AND AS NEXT FRIEND OF DWIGHT**
**TATUM, SANDY TATUM, LOLA PRISCILLA TATUM, DWIGHT**
**TATUM, JR., AND DWAYNE TATUM, Appellees**

---

**On Appeal from the 212th District Court**
**Galveston County, Texas**
**Trial Court Case No. 10-CV-1877**

---

## OPINION ON REHEARING

Appellees, Lola Tatum, individually and as next friend of Dwight Tatum,

Sandy Tatum, Lola Priscilla Tatum, Dwight Tatum, Jr., and Dwayne Tatum

(collectively, "the Tatums"), filed a motion for rehearing of our June 21, 2012 opinion. We deny the Tatums' motion for rehearing, withdraw our opinion and judgment of June 21, 2012, and substitute this opinion and judgment in their place.

The Tatums sued appellant, The University of Texas Medical Branch at Galveston ("UTMB"), for medical malpractice for the loss of a bone flap removed from Dwight Tatum's skull. UTMB filed a plea to the jurisdiction and motion to dismiss arguing that the Tatums failed to establish waiver of immunity under the Texas Torts Claim Act, and the trial court denied the plea. In two issues on appeal, UTMB argues that (1) the Tatums' claims do not involve the use of tangible personal property and (2) the Tatums failed to plead and prove personal injuries proximately caused by a condition or use of tangible personal property.

We reverse and render judgment dismissing the suit against UTMB for lack of subject-matter jurisdiction.

**Background**

In July 2008, Dwight Tatum fell and hit his head, causing swelling of his brain. UTMB physicians performed a craniotomy to remove a bone flap from Dwight's skull to relieve the pressure on his brain caused by the swelling. In September 2008, Galveston Island, where UTMB is located, suffered extensive flooding and loss of power as a result of Hurricane Ike. In May 2009, Dwight's swelling had subsided and physicians decided to perform a cranioplasty to replace

2

the previously removed bone flap. However, UTMB was unable to locate the bone flap taken from Dwight's skull, so physicians used titanium mesh in performing the cranioplasty.

The Tatums filed a healthcare liability suit against UTMB alleging negligent mishandling and misuse of Dwight's bone flap. Specifically, their live pleading alleged that UTMB's agents and employees "negligently mishandled and misused [Dwight's removed bone flap] . . . in such a manner that it was no longer available in May 2009 when his surgeons wanted to replace it in his skull" and that such negligence was the proximate cause of his injury, asserting that Dwight "will have an artificial plate in his skull until the day he dies." The Tatums also filed the expert report of John Hyde, Ph.D., identifying the following "areas of negligence":

1.  Failure to provide a safe, secure, standardized and bi-directionally traceable tissue storage system.

2.  Failure to develop and maintain appropriate strategies for managing safety and security during emergencies.

UTMB subsequently filed a plea to the jurisdiction and motion to dismiss arguing that the Tatums had failed to adequately establish that UTMB had waived its immunity to suit under the Tort Claims Act because they failed to state a claim based on the negligent use of tangible personal property by any UTMB employee. UTMB sought dismissal of the Tatums' claims against it, arguing that "there are

3

absolutely no waivers of governmental immunity which can arise against [UTMB] as a result of [the Tatums'] allegations."

The Tatums responded, asserting that UTMB "took into its possession, control and care a piece of tangible personal property belonging to Mr. Tatum: a piece of his skull. . . . UTMB negligently failed to care for Mr. Tatum's tangible personal property and it was lost." The Tatums argued that the bone flap was used because "UTMB employed the piece of skull in its medical treatment for the purpose of alleviating the effects of Mr. Tatum's swelling brain. . . ."

Following a hearing on the plea, the trial court denied the plea to the jurisdiction and motion to dismiss. This appeal followed.[1]

## Plea to the Jurisdiction

A plea to the jurisdiction challenges a trial court's subject-matter jurisdiction to hear the case. *City of Dallas v. Carbajal*, 324 S.W.3d 537, 538 (Tex. 2010) (per curiam); *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). Subject-matter jurisdiction is essential to the authority of a court to decide a case and is never presumed. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443–44 (Tex. 1993). The existence of subject-matter jurisdiction is a question of law that we review de novo. *City of Elsa v. Gonzalez*, 325 S.W.3d 622, 625

---

[1] Civil Practice and Remedies Code section 51.014(a) permits a party to appeal an interlocutory order that grants or denies a governmental unit's plea to the jurisdiction. TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(8) (Vernon Supp. 2011).

4

(Tex. 2010) (per curiam); *State Dep't of Highways & Pub. Transp. v. Gonzales*, 82 S.W.3d 322, 327 (Tex. 2002).

The plaintiff has the burden to allege facts affirmatively demonstrating that the trial court has subject-matter jurisdiction. *Cnty. of Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex. 2002); *Tex. Ass'n of Bus.*, 852 S.W.2d at 446. In reviewing a plea to the jurisdiction, we must construe the pleadings liberally in favor of the pleader and look to the pleader's intent. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). If the facts affirmatively demonstrate the trial court's jurisdiction to hear the case, the plea to the jurisdiction must be denied. *See id.* 22–27; *see also Kamel v. Univ. of Tex. Health Sci. Ctr. at Houston*, 333 S.W.3d 676, 681 (Tex. App.—Houston [1st Dist.] 2010, pet. denied) ("[W]e are required to construe the allegations in favor of jurisdiction unless, on its face, the petition affirmatively demonstrates a lack of jurisdiction."). If the pleadings do not demonstrate incurable defects in the jurisdiction, but also fail to allege sufficient facts to demonstrate the trial court's jurisdiction, the issue is one of pleading sufficiency and the plaintiff should be afforded an opportunity to amend. *Miranda*, 133 S.W.3d at 226–27. If the pleadings affirmatively negate the existence of jurisdiction, then a plea to the jurisdiction may be granted without allowing an opportunity to amend. *See id.* at 227.

**Waiver of Immunity Under the Texas Tort Claims Act**

Sovereign immunity deprives a trial court of subject-matter jurisdiction in lawsuits against the state or certain governmental units unless the state consents to suit. *Id.* at 224. It is undisputed that UTMB is a governmental entity that generally enjoys governmental immunity from tort liability unless immunity has been waived. *See Univ. of Tex. Med. Branch at Galveston v. Hohman*, 6 S.W.3d 767, 777 (Tex. App.—Houston [1st Dist.] 1999, pet. dism'd w.o.j.) (recognizing that that UTMB is state agency). When a claimant asserts a healthcare-liability claim against a governmental entity that is a healthcare provider, the claimant must comply with both the Medical Liability Act and the Texas Tort Claims Act. *Univ. of Tex. Med. Branch at Galveston v. Simmons*, No. 14-11-00215-CV, 2012 WL 19665, at *2 (Tex. App.—Houston [14th Dist.] Jan. 5, 2012, no pet.) (mem. op.).

The Texas Tort Claims Act provides a limited waiver of governmental liability from suit. TEX. CIV. PRAC. & REM. CODE ANN. § 101.021 (Vernon 2011). The Tatums argue that UTMB's governmental immunity has been waived under section 101.021(2), which provides that "[a] governmental unit in the state is liable for . . . personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law." *Id.* § 101.021(2). The Tatums allege that Dwight Tatum suffered personal injury as a result of UTMB's negligent

mishandling and misuse of his bone flap, which they contend is tangible personal property.

The Texas Supreme Court has defined "use" as "to put or to bring into action or service; to employ for or apply to a given purpose." *Tex. Dep't of Criminal Justice v. Miller*, 51 S.W.3d 583, 588 (Tex. 2001); *Simmons*, 2012 WL 19665, at *3. Furthermore, the plaintiff's injury must be proximately caused by the use of tangible personal property. *Dallas Cnty. Mental Health & Mental Retardation v. Bossley*, 968 S.W.2d 339, 342 (Tex. 1998). "The requirement of causation is more than mere involvement," and the "[p]roperty does not cause injury if it does no more than furnish the condition that makes the injury possible." *Id.* at 343; *see also Miller*, 51 S.W.3d at 588 (holding that it is not sufficient for waiver purposes "that some property is merely involved" and concluding that property used might have furnished condition that made injury possible, but did not hurt patient or make him worse in and of itself).

Claims that involve failure to use and non-use of tangible personal property are not within the waiver provided in section 101.021(2). *Miller*, 51 S.W.3d at 587–88. Likewise, general medical malpractice claims or claims for errors in medical judgment, such as claims of negligent supervision, failure to perform the necessary medical treatment, and failure to use acceptable practices, do not fall within the waiver in section 101.021(2). *Kamel*, 333 S.W.3d at 686 (citing *Arnold*

7

*v. Univ. of Tex. Sw. Med. Ctr. at Dallas*, 279 S.W.3d 464, 469 (Tex. App.—Dallas 2009, no pet.)). We look to the true nature of the pleadings to determine whether a plaintiff's claims are an attempt to artfully plead around the requirements of the TTCA. *Id.* (citing *Arnold*, 279 S.W.3d at 470).

Our sister court has recently considered a similar fact pattern. *See Simmons*, 2012 WL 19665, at *3. In *Simmons*, the plaintiff alleged that the hospital negligently failed to properly train and credential its physicians, staff, and nurses, failed to safeguard his bone flap removed during a craniotomy, failed to develop and implement proper procedures for safeguarding the bone flap, and failed to ensure that its employees followed proper procedures and policies. *Id.* The *Simmons* court stated, "Presuming for the sake of argument that a bone flap is tangible personal property,[2] none of Simmons' allegations are based upon a negligent use of tangible personal property." *Id.* (citing *Univ. of Tex. M.D. Anderson Cancer Ctr. v. King*, 329 S.W.3d 876, 880 (Tex. App.—Houston [14th Dist.] 2010, pet. denied) (holding that allegations of "failure to develop, employ, monitor, and follow" policies and procedures, "failure to assure the competence of

---

[2]  Although the Fourteenth Court of Appeals "[p]resum[ed] for the sake of argument that a bone flap is personal property," it cited *Dominguez ex rel. Ramirez v. Bexar County Medical Examiner's Office*, No. 10-06-00109-CV, 2007 WL 613792, at *3 (Tex. App.—Waco Feb. 28, 2007, no pet.) (mem. op.), which concluded that bodily remains do not constitute personal property for which party a may sue the state. *Univ. of Tex. Med. Branch at Galveston v. Simmons*, No. 14-11-00215-CV, 2012 WL 19665, at *3 (Tex. App.—Houston [14th Dist.] Jan. 5, 2012, no pet.) (mem. op.).

medical staff," and "failure to monitor and oversee quality treatment" are not allegations under section 101.021(2) for which immunity is waived)). The *Simmons* court further concluded that Simmons' pleadings did not amount to a claim of misuse of tangible personal property. *Id.*

Here, the Tatums alleged that UTMB's agents and employees "negligently mishandled and misused [Dwight's removed bone flap] . . . in such a manner that it was no longer available in May 2009 when his surgeons wanted to replace it in his skull." They argued that UTMB "took into its possession, control and care a piece of tangible personal property belonging to Mr. Tatum: a piece of his skull. . . . UTMB negligently failed to care for Mr. Tatum's tangible personal property and it was lost." The Tatums argued that the bone flap was used because "UTMB employed the piece of skull in its medical treatment for the purpose of alleviating the effects of Mr. Tatum's swelling brain. . . ." Likewise, their expert report stated that UTMB was negligent for failing "to provide a safe, secure, standardized and bi-directionally traceable tissue storage system" and failing "to develop and maintain appropriate strategies for managing safety and security during emergencies."

Assuming, without deciding, that a bone flap is tangible personal property, none of the Tatums' pleadings allege a negligent use of tangible personal

9

property.[3]  The allegations of failure to provide an appropriate tissue storage system and failure to maintain appropriate strategies during an emergency are claims for errors in medical judgment or general medical negligence and do not involve the use of tangible personal property to proximately cause an injury. *Kamel*, 333 S.W.3d at 686; *see also Miller*, 51 S.W.3d at 588 (holding that it is not sufficient for waiver purposes "that some property is merely involved"); *Bossley*, 968 S.W.2d at 343 (holding that "[t]he requirement of causation is more than mere involvement," and the "[p]roperty does not cause injury if it does no more than furnish the condition that makes the injury possible"); *Simmons*, 2012 WL 19665, at *3 (holding allegations of failure to properly train staff, failure to safeguard bone flap, and failure to implement proper procedures for safeguarding bone flap were not based upon negligent use of personal property).  Nothing in the Tatums' pleadings indicate that UTMB's use of the bone flap itself caused Tatum harm:

---

[3]    On rehearing, the Tatums argue that they alleged that "a particular piece of property, the freezer [where the bone flap was stored], was itself defective and used in a negligent manner."  Thus, they argue that misuse of the freezer is an allegation that falls within the waiver provided in section 101.021(2).  *See Freeman v. Harris Cnty.*, 183 S.W.3d 885, 889 (Tex. App.—Houston [1st Dist.] 2006, pet. denied) (holding that use of incinerator to negligently dispose of body following autopsy was sufficient to waive immunity under section 101.021).  However, the Tatums' live pleading contained no such allegation and only indirectly stated that UTMB "stored the [bone flap] in such a way that it could not be found."  Furthermore, the facts pled by the parties affirmatively negate such a claim, as UTMB asserted that the bone flap was lost because the bone bank where the flap was stored lost power following Hurricane Ike, and the Tatums concurred that the bone flap was lost in the course of the storm.

they do not argue that UTMB was negligent in removing it to alleviate swelling. They allege that it was removed and then never used again.

The allegation that UTMB "misused" the bone flap because it was not available for reinsertion during the cranioplasty is likewise not an allegation in which the use of the property—the bone flap—proximately caused the injury. The true nature of this allegation is actually one of failure to use or non-use, which are not within the waiver provided in section 101.021(2). *See Miller*, 51 S.W.3d at 587–88; *Simmons*, 2012 WL 19665, at *3; *Kamel*, 333 S.W.3d at 686.

We conclude that the Tatums failed to plead sufficient factual allegations that the negligent use of tangible property by UTMB caused their injuries within the waiver provided by section 101.021(2). *See Simmons*, 2012 WL 19665 at *3–4. We further conclude that the Tatums' pleadings are incurably defective and affirmatively negate the existence of jurisdiction. The trial court erred in denying UTMB's plea to the jurisdiction and in failing to dismiss the Tatums' claims against UTMB. *See Miranda*, 133 S.W.3d at 227.

We sustain UTMB's first issue.[4]

---

[4] Because of our holding on this issue, it is unnecessary to address the remaining issue.

11

## Conclusion

We reverse the order of the trial court denying UTMB's plea to the jurisdiction and render judgment dismissing the Tatums' claims against UTMB for want of subject-matter jurisdiction.



Evelyn V. Keyes
Justice

Panel consists of Chief Justice Radack and Justices Jennings and Keyes.