**Opinion issued February 25, 2014**



In The

# Court of Appeals

For The

# First District of Texas

---

## NO. 01-13-00241-CV

---

**CITY OF HOUSTON, Appellant**

**V.**

**ROBERT A. SMITH, Appellee**

---

**On Appeal from the 61st District Court**
**Harris County, Texas**
**Trial Court Cause No. 2011-46461**

---

## MEMORANDUM OPINION

This is an accelerated appeal from the trial court's denial of the City of

Houston's plea to the jurisdiction. The City argues that the trial court erred in

denying the plea because appellee Robert A. Smith did not timely satisfy the

jurisdictional prerequisites to suit under the Texas Whistleblower Act. We affirm.

## Background

Smith has been employed by the Houston Police Department ("HPD") for 26 years. He initially worked in the Identification Division of the HPD, which handles fingerprint evidence, and eventually reached the rank of deputy administrator.[1] In January 2010, Smith became acting administrator of the Identification Division.[2] According to Smith's deposition testimony, the acting administrator job was only a temporary job assignment. Accordingly, Smith would receive the $8 pay raise associated with the acting administrator assignment only for so long as he was performing the duties of that role. According to Smith's deposition testimony, during his tenure as acting administrator he became aware of various alleged errors and violations of law of a third party that the HPD had hired to handle certain aspects of the fingerprint identification process. He reported his concerns to his superiors in the HPD.

In October 2010, then-Assistant Chief Vicki King spoke with Smith and told him that he was being reassigned to the Property Division. Smith moved to the Property Division in November 2010, at which point he ceased having the title of

---

[1] Due to reclassifications, the deputy administrator rank is now the rank of lieutenant.

[2] Due to reclassifications, the acting administrator rank is now the rank of acting captain.

2

acting administrator and the $8 increase in pay that had come with it, and was reclassified as a lieutenant. King testified that the reason that she decided to reassign Smith to the Property Division was his "failure to follow directions, to report to the chain of command, [and] to bring issues to my attention" with respect to his concerns regarding the outside company, and that "[h]e made policy decisions that . . . almost had a catastrophic effect." But Smith was not told that this was the reason for his reassignment; King told Smith that he was "no longer a good fit for the assignment as acting [administrator]" and that he was going to be moved to the Property Division to work on a "special project." She testified, "I think he knew that he had messed up." According to Smith, he was told that he was being reassigned because there were concerns regarding nepotism[3] and because King needed him for a temporary special assignment in the Property Division that required his expertise. King testified that the purpose of the transfer was to permit Smith to learn the ISO process that was being implemented in the Property Division, and that the intent was for the ISO process to then be brought over to the forensic division and that Smith would be one of the "point people." She testified that she also told Smith that if he migrated over to a lieutenant position in the Property Division, and the forensic division was moved elsewhere,

_____

[3]     Smith's wife also worked in the Identification Division.

3

he would have an opportunity to establish himself with the investigative divisions, and "it was an opportunity . . . that no one else in their division was going to, to position themselves to be able to get a detective's job, a lieutenant's job, and to make a good name for themselves in the organization." When asked whether the assignment was "always meant to be a permanent transfer," King responded, "No. It was a temporary assignment."

On May 27, 2011, Smith signed a form acknowledging that his assignment to the Property Division was a permanent transfer. According to Smith, before this point, he believed that he was merely working in the Property Division as part of a temporary special project, and would return to his job in the Identification Division when the assignment was complete. Smith asserts that he did not realize the true reason for his reassignment—his complaints regarding the outside company—until he was forced to accept the transfer permanently. Smith claims that he signed the permanent transfer form under duress, because he was told that he would be relieved of duty if he did not sign.

Smith initiated a grievance regarding the transfer 56 days after he signed the permanent transfer form. He filed suit, alleging that the transfer was an adverse personnel action in violation of the Texas Whistleblower Act, 70 days after signing the form.

The City filed a plea to the jurisdiction, alleging that Smith did not comply with the Whistleblower Act's jurisdictional prerequisite to initiate a grievance within 90 days after the alleged violation occurred or was discovered through reasonable diligence. *See* TEX. GOV'T CODE ANN. § 554.005–.006 (West 2012). The City argued that the 90 days should be measured from the time in 2010 when Smith was originally notified of his reassignment and was moved to the Property Division, because the move involved a drop in title and in pay. The City argued that Smith showed poor judgment and acted improperly in handling his concerns regarding the third party's allegedly improper practices, and that Smith knew that he was being transferred to the Property Division because of his improper conduct. The trial court denied the City's plea to the jurisdiction, and the City brought this interlocutory appeal.[4]

## Discussion

In two issues, the City contends that the trial court erred in denying its plea to the jurisdiction because (1) Smith did not timely initiate a grievance or file suit, and (2) it conclusively proved that Smith learned of the complained-of transfer in

---

[4] *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(8) (West Supp. 2012) (authorizing interlocutory appeal from denial of governmental unit's plea to jurisdiction).

5

October 2010 and was transferred in November 2010, but waited until July and August 2011 to grieve and sue.

## A. Standard of Review

A plea to the jurisdiction challenges the trial court's subject-matter jurisdiction to hear a case. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000); *Kamel v. Univ. of Tex. Health Sci. Ctr.*, 333 S.W.3d 676, 681 (Tex. App.—Houston [1st Dist.] 2010, pet. denied). The existence of subject-matter jurisdiction is a question of law that we review de novo. *State Dep't of Highways & Pub. Transp. v. Gonzalez*, 82 S.W.3d 322, 327 (Tex. 2002); *Kamel*, 333 S.W.3d at 681.

When, as here, a plea to the jurisdiction "challenges the existence of jurisdictional facts, we consider relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues raised, even where those facts may implicate the merits of the cause of action." *City of Waco v. Kirwan*, 298 S.W.3d 618, 622 (Tex. 2009) (internal quotation omitted). The plea to the jurisdiction standard mirrors that of a traditional motion for summary judgment. *Ross v. Linebarger, Goggan, Blair & Sampson, L.L.P.*, 333 S.W.3d 736, 744 (Tex. App.— Houston [1st Dist.] 2010, no pet.). When reviewing the evidence, we must take as true all evidence in favor of the nonmovant and "indulge every reasonable

6

inference and resolve any doubts in the nonmovant's favor." *Kirwan*, 298 S.W.3d at 622 (quoting *Miranda*, 133 S.W.3d. at 228). If the evidence creates a fact question regarding jurisdiction, the trial court cannot grant the plea to the jurisdiction, and the fact issue will be resolved by the fact finder; however, if the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea as a matter of law. *Kamel*, 333 S.W.3d at 681; *Miranda*, 133 S.W.3d at 227–28.

## B. Applicable Law

As a preliminary matter, we note that Smith's argument that the 90 day requirement is not jurisdictional relies upon cases decided before the 2005 revisions to Section 311.034, which explicitly made all statutory prerequisites to suit against a governmental entity jurisdictional and abrogated previous cases holding otherwise. *See* Act of May 25, 2005, 79th Leg., R.S., ch. 1150, § 1, 2005 Tex. Gen. Laws 3783, 3783 (amending section 311.034 effective September 1, 2005) (current version at TEX. GOV'T CODE ANN. § 311.034 (West 2013)).

The Texas Whistleblower Act bars state and local governments from retaliating against public employees who report violations of law:

> A state or local governmental entity may not suspend or terminate the employment of, or take other adverse personnel action against, a public employee who in good faith reports a violation of law by the employing governmental entity or another public employee to

7

an appropriate law enforcement authority.

TEX. GOV'T CODE ANN. § 554.002(a) (West 2012). The Act defines a "personnel action" as "an action that affects a public employee's compensation, promotion, demotion, transfer, work assignment, or performance evaluation," and the Texas Supreme Court has defined an "adverse" action as an action that "would be likely to dissuade a reasonable, similarly situated worker from making a report under the Act." *Id.* § 554.001(3) (West 2012); *Montgomery Cnty. v. Park*, 246 S.W.3d 610, 614 (Tex. 2007).

If an adverse action is taken, the Texas Whistleblower Act requires a claimant to "initiate action under the grievance or appeal procedures of the employing state or local governmental entity relating to suspension or termination of employment or adverse personnel action" before filing suit. TEX. GOV'T CODE ANN. § 554.006(a). This statutory prerequisite to suit is jurisdictional. *See id.* § 311.034 ("Statutory prerequisites to a suit . . . are jurisdictional requirements in all suits against a governmental entity."); *Fort Bend Indep. Sch. Dist. v. Gayle*, 371 S.W.3d 391, 395 (Tex. App.—Houston [1st Dist.] 2012, pet. denied). When a plaintiff has not satisfied this requirement, his lawsuit is barred by governmental immunity and must be dismissed. *See Gayle*, 371 S.W.3d at 395. To be timely under the Whistleblower Act, "[t]he employee must invoke the applicable

grievance or hearing procedures not later than the 90th day after the date on which the alleged violation of this chapter:

(1) occurred; or

(2) was discovered by the employee through reasonable diligence.

TEX. GOV'T CODE ANN. § 554.006(b). "The relevant act for limitations purposes is the date upon which the plaintiff discovered, through reasonable diligence, that [a violation has occurred], if that discovery occurred after the actual date of [the violation]." *See Tex. A & M Univ. at Corpus Christi v. Hamann*, 3 S.W.3d 215, 217 (Tex. App.—Corpus Christi 1999, pet. denied); *see also Villareal v. Williams*, 971 S.W.2d 622, 626 (Tex. App.—San Antonio 1998, no pet.) (90-day period ran from date plaintiffs were aware violation of Whistleblower Act may have occurred).

## C. Analysis

Here, both the City and Smith agree that Smith initiated his grievance on July 22, 2011 and filed suit on August 5, 2011. The sole dispute is whether Smith was required to grieve within 90 days of his reassignment in November 2010, or whether the 90-day period ran from May 27, 2011, the date Smith signed a form acknowledging that the transfer was permanent.

The City contends that the 90-day period runs from the date of Smith's

9

reassignment because Smith was informed that he was being transferred and knew that the move involved a lesser title and a reduction in pay. Smith does not dispute that he was told he was being moved to the Property Division in October 2010, that he was moved to the Property Division in November 2010, or that the reassignment came with a lower rank and lower pay. But Smith contends that there is a fact issue about whether he knew the November 2010 move was an adverse personnel action because King told him that his move to the Property Division was a temporary special assignment for which his expertise was needed. Accordingly, Smith contends that he did not realize until May 2011 (when the transfer became permanent) that the action was motivated by his complaints regarding the outside company.

Smith contends that his grievance was timely under the continuing-violation doctrine. *See Univ. of Houston v. Barth*, 178 S.W.3d 157, 162–63 (Tex. App.—Houston [1st Dist.] 2005, no pet.) (continuing-violation doctrine may be applied to Whistleblower Act complaints). The "continuing violation" doctrine applies when an unlawful employment practice manifests itself over time, rather than as a series of discrete acts. *Davis v. Autonation USA Corp.*, 226 S.W.3d 487, 493 (Tex. App.—Houston [1st Dist.] 2006, no pet.); *Wal–Mart Stores v. Davis*, 979 S.W.2d 30, 41–42 (Tex. App.—Austin 1998, pet. denied). Under the continuing violation

10

theory, a plaintiff must show an organized scheme leading to and including a present violation, so that it is the cumulative effect of the discriminatory practice, rather than any discrete occurrence, that gives rise to the cause of action. *Autonation*, 226 S.W.3d at 493; *Cooper–Day v. RME Petroleum Co.*, 121 S.W.3d 78, 87 (Tex. App.—Fort Worth 2003, pet. denied). For example, a claim of a hostile work environment is a continuing violation, while "termination, failure to promote, denial of transfer, or refusal to hire" are discrete acts. *Santi v. Univ. of Tex. Health Sci. Ctr.*, 312 S.W.3d 800, 805 (Tex. App.—Houston [1st Dist.] 2009, no pet.). The "focus is on what event should, in fairness and logic, have alerted the average layperson to act to protect his or her rights." *Autonation*, 226 S.W.3d at 493 (quoting *Davis*, 979 S.W.2d at 41). The City argues that Smith is complaining of a discrete occurrence—an involuntary reassignment with an accompanying loss in title and pay—and therefore the continuing violation doctrine does not apply.

We agree with the City that the continuing violation doctrine does not apply to this case. However, "the legislature has provided claimants under the Whistleblower Act with a discovery rule which serves to toll limitations in certain circumstances." *Hamann*, 3 S.W.3d at 217. Under the statute, the 90-day timeline begins to run from the date that the alleged violation occurred, *or* was discovered by the employee through reasonable diligence. *See* TEX. GOV'T CODE ANN.

11

§ 554.006(b).

Here, we conclude that the evidence raises a fact issue regarding the date upon which Smith, exercising reasonable diligence, discovered that an alleged violation of the Whistleblower Act had occurred. *See* TEX. GOV'T CODE ANN. § 554.006(b); *see also Hamann*, 3 S.W.3d at 218 (relevant act for limitations purposes is the date upon which plaintiff discovers, through reasonable diligence, that a violation occurred); *Villareal*, 971 S.W.2d at 626 (90 day period ran from date plaintiffs were aware violation of Whistleblower Act may have occurred). The City argues that the reassignment was clearly adverse because Smith was reassigned to a lower ranking position that paid less than the acting administrator job, and because Smith testified that assignment to the Property Division had a stigma associated with it. The City also points out that Smith himself has alleged, in the trial court, that the reassignment to the Property Division in November 2010 was an adverse personnel action.

But the City and Smith agree that Smith's acting administrator assignment in the Identification Division was only a temporary one, and that he was entitled to the salary associated with that position only for so long as he was in that position. When Smith was reassigned to the Property Division, he was assigned the rank of lieutenant, the same rank that he held prior to taking on the acting administrator

12

duties. Further, Smith testified that he believed, based on what Chief King told him, that he was being reassigned to the Property Division to help with a temporary special project. Chief King, who informed Smith of his reassignment, testified that she told Smith that he was going to be moved to the Property Division to work on a "special project" and that it was a "temporary assignment." She testified that the stated purpose of the transfer was to permit Smith to learn the ISO process, and that the intent was for the ISO process to then be brought over to the forensic division and that Smith would be one of the "point people." She testified that she also told Smith that if he migrated over to a lieutenant position in the Property Division, and the forensic division was moved elsewhere, he would have an opportunity to establish himself with the investigative divisions, and "it was an opportunity . . . that no one else in their division was going to, to position themselves to be able to get a detective's job, a lieutenant's job, and to make a good name for themselves in the organization." She testified that it was not initially meant to be a permanent transfer, and that Smith was not officially transferred to the Property Division until July 2011, the same month in which he filed his grievance.

We must resolve all doubts in the nonmovant's favor, and accordingly, we conclude that the evidence raises a fact issue regarding when Smith discovered that

13

an alleged violation of the Whistleblower Act had occurred.[5] *See Miranda*, 133 S.W.3d at 228; *Kamel*, 333 S.W.3d at 681; *Hamann*, 3 S.W.3d at 218; *Villareal*, 971 S.W.2d at 626. Because the evidence creates a fact question regarding jurisdiction, the trial court correctly denied the plea to the jurisdiction. *See Miranda*, 133 S.W.3d at 227–28 (holding that if evidence creates fact question regarding jurisdiction, trial court cannot grant plea to jurisdiction, and the fact issue should be resolved by fact finder); *Barth*, 178 S.W.3d at 163 (holding that if there are fact issues regarding timely grieving or timely filing under Whistleblower Act, trial court precluded from granting plea to jurisdiction); *see also Hamann*, 3 S.W.3d at 218 (affirming denial of plea to the jurisdiction in suit filed more than 90 days after plaintiff's termination because relevant date was date violation was discovered through reasonable diligence); *Villareal*, 971 S.W.2d at 626 (90 days begins on date plaintiff suspects the reason for the adverse action).

We overrule the City's two issues.

---

[5] We note that in so holding, we do not decide whether Smith's underlying claim is meritorious or whether the action alleged constitutes an adverse personnel action.

## Conclusion

We affirm the trial court's denial of the City's plea to the jurisdiction.


                                               Rebeca Huddle
                                               Justice

Panel consists of Chief Justice Radack and Justices Bland and Huddle.