COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | |
|---|---|---|
| TEXAS TECH UNIVERSITY HEALTH SCIENCES CENTER, | § | No. 08-22-00112-CV |
| | § | |
| Appellant, | § | Appeal from the |
| | § | County Court at Law No. 7 |
| v. | § | of El Paso County, Texas |
| CLAUDIA OAXACA, Individually and as Independent Executor of the Estate of JUAN R. OAXACA, | § | (TC# 2018DCV0531) |
| | § | |
| Appellee. | § | |

## MEMORANDUM OPINION

Appellant Texas Tech University Health Sciences Center (TTUHSC) challenges the trial court's denial of its plea to the jurisdiction in this medical negligence action subject to the Texas Tort Claims Act (TTCA). *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 101.001–.109. Juan R. Oaxaca sued TTUHSC alleging its physicians negligently caused him injury and damages by their use or misuse of a catheter during his medical treatment.[1] On appeal, Appellee Claudia Oaxaca, surviving spouse of Juan R. Oaxaca, deceased, continues the underlying suit, which was initially

---

[1] While Oaxaca's case remained pending in the trial court, his surviving spouse, Claudia Oaxaca, filed a suggestion of death giving notice that her husband died on August 8, 2020, and she was then serving as the independent executor of his estate. In accordance with this record, we have amended the caption of the case to properly reflect the change in party and the capacities in which she maintains the suit.

brought by her husband. Finding no error on review, we affirm the trial court's order denying the plea to the jurisdiction and motion to dismiss.

## I. BACKGROUND[2]

On January 13, 2016, Juan R. Oaxaca was hospitalized for treatment of cirrhosis and end stage renal disease at University Medical Center of El Paso (UMC). At all times relevant, physicians of TTUHSC managed Oaxaca's nephrology care and treatment. Among other care, his treating physicians determined his condition required dialysis treatment. On January 26, 2016, physicians inserted a nontunneled temporary dialysis catheter into Oaxaca's right jugular vein. On February 11, 2016, physicians exchanged the temporary catheter with another catheter of a similar type. Plans were made for transferring Oaxaca the next day to Highlands Rehabilitation Hospital (HRH) for continuation of his care. Towards that end, a note from a TTUHSC nephrology consultation requested that Oaxaca be evaluated for dialysis at HRH, and if no longer needed, to remove the temporary catheter in use. On February 12, 2016, Oaxaca was discharged and transferred by ambulance to HRH.

On arrival, he exhibited symptoms consistent with sepsis, including a temperature of 103.1, pulse rate 110, blood pressure 127/81, and oxygen saturation of 93% on 3 liters of oxygen. HRH's attending physician ordered his immediate transfer back to UMC. Instead, however, he was diverted to Del Sol Medical Center, where he was admitted that same day. As his condition became hypotensive, he was diagnosed as suffering from septic shock and admitted to Del Sol's intensive care unit. His treating physicians identified the temporary dialysis catheter as being the source of

---

[2] The background facts are based on appellee's pleading and the jurisdictional evidence of record. For purposes of this appeal, we take as true all evidence favorable to the nonmovant based on our applicable standard of review. *See Texas Dep't of Transp. v. Ramirez*, 74 S.W.3d 864, 867 (Tex. 2002); *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 227–28 (Tex. 2004).

his infection, and it was removed. On February 25, 2016, after his condition stabilized, Oaxaca was discharged to a rehabilitation facility for continued care and treatment.

On February 12, 2018, Juan R. Oaxaca filed his original petition alleging claims of medical negligence against TTUHSC, contending there was a misuse of tangible property while he remained under the care of its physicians, which proximately caused his injuries and damages. Specifically, Oaxaca alleged a misuse of tangible personal property by use of an infected catheter.

TTUHSC thereafter filed a plea to the jurisdiction asserting: "Upon review of Plaintiff's true allegations as demonstrated by the undisputed jurisdictional evidence, there was no negligent use of tangible personal property that caused injury to Plaintiff concerning the alleged infected catheter or improper discharge from UMC." It argued Oaxaca had failed to allege a waiver of sovereign immunity under the Texas Tort Claims Act (TTCA). Specifically, TTUHSC urged that none of the allegations of Oaxaca's petition pinpointed any misuse of tangible property directly causing injury to him. Moreover, it asserted the jurisdictional evidence related to Oaxaca's allegations negated such a waiver as a matter of law. Supporting its plea, TTUHSC provided excerpts of Oaxaca's medical records and of deposition testimony of multiple witnesses. Such records included testimony of Juan R. Oaxaca, of Claudia Oaxaca, of certain treating physicians, and of Oaxaca's testifying expert, Louis Roddy, M.D. After supplementing these records, TTUHSC further submitted an expert report from its designated expert, John R. Holcomb, M.D.

Following the passing of Juan R. Oaxaca, his surviving spouse, Claudia Oaxaca, who then served as independent executor of her late husband's estate, filed a second amended original petition. In her live pleading, Oaxaca described two types of catheters—nontunneled and tunneled—which are typically placed for hemodialysis treatment. She alleged that a nontunneled catheter should not be used for chronic, long-term, or outpatient hemodialysis. She claimed that

3

nontunneled catheters are "limited to less than two weeks for internal jugular catheters and should not be used for outpatient settings." Continuing, she alleged that TTUHSC knew or should have known that the nontunneled catheter used for treatment of Juan R. Oaxaca should have been converted to a tunneled catheter within one week, but no less than two, and its failure to convert or remove such catheter caused Oaxaca's resulting injury. Specifically, Oaxaca alleged that the nontunneled temporary catheter should have been converted to a tunneled catheter within one week of placement, on February 3, 2016, or less than two weeks after placement on February 10, 2016. Oaxaca's second amended petition continued with the following pertinent claims:

> [TTUHSC], acting by through agents and employees, negligently misused tangible property, which was a proximate cause of the injuries and damages set forth below.
>
> [TTUHSC's] nephrology consultants knew or should have known the risk of a bloodstream infection outweighed the benefit of keeping the nontunneled temporary catheter and should have converted it to a tunneled catheter. However, [TTUHSC] failed to convert to a tunneled catheter. This negligence was a proximate cause [of] a bloodstream infection which led to sepsis and to septic shock and the injuries and damages stated below.
>
> [TTUHSC's] nephrology consultants knew or should have known the risk of a bloodstream infection outweighed the benefit of keeping the nontunneled temporary catheter and should have removed it when there were signs of a bloodstream infection. However, [TTUHSC] failed to remove the nontunneled catheter. This negligence was a proximate cause of a worsening bloodstream infection which led to sepsis and to septic shock and the injuries and damages stated below the injuries and damages.
>
> As a proximate cause of this misuse of tangible property, the nontunneled temporary dialysis catheter, Mr. Oaxaca developed a bloodstream infection which resulted in sepsis, which developed into septic shock.

Contemporaneous with the filing of her amended pleading, Oaxaca filed a response to TTUHSC's plea to the jurisdiction and motion to dismiss. She incorporated by reference her amended pleading, and further asserted her claim supported a valid waiver of immunity based on a condition or use of tangible property. Oaxaca argued that TTUHSC's jurisdictional evidence

4

failed to negate a waiver of immunity. In support of her response, she attached Oaxaca's medical treatment records and an expert report of Louis Roddy, M.D. She later filed a first supplemental response providing further argument and citation to authorities. TTUHSC replied, arguing that neither Oaxaca's amended pleading nor her response supported a waiver of immunity under the TTCA.

Following a hearing, the trial court denied TTUHSC's plea to the jurisdiction and motion to dismiss. TTUHSC next brought this interlocutory appeal. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(8).

## II. DISCUSSION

In its sole issue, TTUHSC contends the trial court erred in denying its plea to the jurisdiction and motion to dismiss, arguing Oaxaca's claims—as demonstrated by the conclusive jurisdictional evidence—establish there was no actual negligent use of an allegedly infected dialysis catheter. Characterizing the claims as non-use claims, TTUHSC urges they fall outside the scope of the terms of the TTCA's waiver of immunity as a matter of law.

Responding, Oaxaca contends the denial of the plea was proper because the undisputed pleadings affirmatively pleaded, and the jurisdictional evidence demonstrated, the negligent use of tangible property proximately causing her husband's injury. She maintains the pleadings allege negligent use of a catheter by failing to remove it as it became a source of infection, with Juan R. Oaxaca's symptoms showing signs of early sepsis, of which TTUHSC knew or should have known, and this catheter-caused condition led to worsening sepsis and septic shock. In short, Oaxaca contends the undisputed pleadings allege, and the jurisdictional evidence demonstrate, misuse of tangible property, or said differently, an unreasonable use of a hemodialysis catheter.

### A. Standard of review

5

A party suing a governmental unit bears the burden to affirmatively show waiver of immunity. *Univ. of Texas M.D. Anderson Cancer Ctr. v. McKenzie*, 578 S.W.3d 506, 512 (Tex. 2019). Immunity from suit implicates a court's subject matter jurisdiction. *Sampson v. Univ. of Texas at Austin*, 500 S.W.3d 380, 384 (Tex. 2016). "Whether a court has subject matter jurisdiction is a question of law, properly asserted in a plea to the jurisdiction." *Id*. By such plea, a defendant may challenge either the adequacy of the plaintiff's pleadings or the existence of jurisdictional facts on the ground that they do not support a finding of subject matter jurisdiction. *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). We review de novo a trial court's ruling on a plea to the jurisdiction. *Id*. at 228.

When a plea to the jurisdiction challenges the pleadings, we must determine whether the pleader has alleged facts that affirmatively demonstrate the court's subject matter jurisdiction. *Miranda*, 133 S.W.3d at 226. We construe a plaintiff's pleadings liberally and in favor of jurisdiction unless the petition, on its face, affirmatively demonstrates a lack of jurisdiction. *Texas Dep't of Transp. v. Ramirez*, 74 S.W.3d 864, 867 (Tex. 2002); *Arnold v. University of Texas Southwestern Medical Center at Dallas*, 279 S.W.3d 464, 467 (Tex. App.—Dallas 2009, no pet.). But, when a plea challenges the existence of jurisdictional facts, "we consider relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues raised, as the trial court is required to do." *Miranda*, 133 S.W.3d at 227; *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 555 (Tex. 2000) (instructing that a court should "confine itself to the evidence relevant to the jurisdictional issue"). We take as true all evidence favorable to the nonmovant, indulging every reasonable inference and resolving any doubts in its favor. *Miranda*, 133 S.W.3d. at 228.

In these situations, the review of a plea to the jurisdiction mirrors that of a traditional summary judgment motion. *Id.* (citing Texas Rule of Civil Procedure 166a(c)). "[A]fter the state

asserts and supports with evidence that the trial court lacks subject matter jurisdiction, we simply require the plaintiffs, when the facts underlying the merits and subject matter jurisdiction are intertwined, to show that there is a disputed material fact regarding the jurisdictional issue." *Id.* at 228. "If the evidence creates a fact question regarding the jurisdictional issue, then the trial court cannot grant the plea to the jurisdiction, and the fact issue will be resolved by the fact finder." *Id.* at 227–28. Otherwise, when the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, courts may rule on a plea as a matter of law. *Id.* at 228.

## B. Applicable law

The TTCA provides a limited waiver of governmental immunity when the "use" of tangible personal property is involved. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 101.001–.109. The "use" provision provides:

> A governmental unit in the state is liable for . . . personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law.

*Id.* § 101.021(2). Generally speaking, "immunity may be waived when an employee (1) furnishes property in a defective or inadequate condition causing injury or (2) improperly uses otherwise non-defective property to cause injury." *McKenzie*, 578 S.W.3d at 513.

As interpreted by the Supreme Court, the term "'[u]se' means 'to put or bring into action or service; to employ for or apply to a given purpose.'" *Texas Nat. Res. Conservation Comm'n v. White*, 46 S.W.3d 864, 869 (Tex. 2001). Yet, the term has also been recognized as encompassing a "misuse" of tangible personal property. *Univ. of Texas Health Sci. Ctr. at Houston v. DeSoto*, 401 S.W.3d 319, 324 & n.7 (Tex. App.—Houston [14th Dist.] 2013, pet. denied) (citing *Kerrville State Hosp. v. Clark*, 923 S.W.2d 582, 584 (Tex. 1996) ("[T]he issue is whether [the government's] administration of an oral form of [a drug], rather than an injectionable drug, constitutes use or

misuse of tangible personal property under the terms of the [TTCA]."); and *Univ. of Texas Med. Branch at Galveston v. Malveaux,* No. 14–09–00878–CV, 2010 WL 2968021, at *3 (Tex. App.— Houston [14th Dist.] July 29, 2010, pet. denied) (mem. op.) (recognizing immunity may be waived for claims involving "use or misuse of property"). As a result, "misuse" may refer to the negligent use of personal property, while "use" refers to the non-negligent use of defective personal property. *See, e.g.*, *Lowe v. Texas Tech Univ.*, 540 S.W.2d 297, 300 (Tex. 1976) (holding that allegation of furnishing defective football equipment states a case within the statutory waiver of immunity arising from some condition or some use of tangible property); *City of San Augustine v. Parrish*, 10 S.W.3d 734, 738 (Tex. App.—Tyler 1999, pet. dism'd w.o.j.) (officer negligently fired gun).

Notably, however, mere involvement of tangible property is not enough. *Texas Dep't of Criminal Justice v. Miller*, 51 S.W.3d 583, 588 (Tex. 2001). Rather, the use of the property must have actually caused the injury. *Id.* Similarly, a claim of non-use is also insufficient to waive immunity as actual use is required to demonstrate a waiver of immunity. *McKenzie*, 578 S.W.3d at 513.

## C. Waiver of immunity based on TTCA

We first consider TTUHSC's argument challenging Oaxaca's second amended petition. Oaxaca's live pleading alleged TTUHSC negligently misused the temporary nontunneled catheter proximately causing Oaxaca's injuries. TTUHSC argues Oaxaca's amended pleading "significantly altered" the allegations and lacks evidentiary support. It argues the live pleading is "at best [a] mere artful pleading," filed in "an inappropriate attempt to expand the waiver of sovereign immunity under the TTCA." Continuing, it urges that, because the discovery deadline had expired prior to the filing of the live pleading, and because it lacks evidentiary support, its

allegations are groundless and cannot support a waiver of sovereign immunity. On this record, however, we disagree.

First, TTUHSC points us to no authority, and we find none, to support its argument that the passing of a discovery deadline is relevant to our review. Second, the record shows the parties had agreed, and the trial court had signed, a third amended docket control and scheduling order setting a deadline of April 1, 2022, for completion of discovery, and a later deadline of June 2, 2022, for plaintiff to supplement or amend pleadings. Oaxaca timely filed both her response to TTUHSC's plea and her second amended petition on June 2, 2022. *See* TEX. R. CIV. P. 63 (permitting amendment of pleadings) A week later, on June 9, 2022, TTUHSC replied with an acknowledgment that Oaxaca had clarified her allegations by means of the amending pleading. Yet, TTUHSC neither raised a complaint about Oaxaca amending her pleading after expiration of the discovery deadline, nor otherwise requested striking of the pleading from the trial court. To that extent, then, TTUHSC has waived any complaint about the timing or substance of Oaxaca's amended pleading. *See* TEX. R. APP. P. 33.1 (requiring a showing of a complaint made to the trial court by a timely request, objection, or motion as a prerequisite to present complaint for appellate review).

As provided by the applicable standard of review, a plaintiff is not required to prove her allegations on the merits but only to plead sufficient facts to affirmatively demonstrate the trial court's subject matter jurisdiction. *Miranda*, 133 S.W.3d at 227. On review, we are required to construe Oaxaca's pleadings liberally and take all factual allegations as true. *McKenzie*, 578 S.W.3d at 512. Moreover, when pleadings are found insufficient, we are further required to consider whether to afford a plaintiff an opportunity to amend the deficient pleading. *See Miranda*, 133 S.W.3d at 226–27 ("If the pleadings do not contain sufficient facts to affirmatively

9

demonstrate the trial court's jurisdiction but do not affirmatively demonstrate incurable defects in jurisdiction, the issue is one of pleading sufficiency and the plaintiffs should be afforded the opportunity to amend."). Thus, amended pleadings are ordinarily permitted and we find no basis for disregarding allegations contained within Oaxaca's second amended petition.

Moving beyond the challenge raised against the live pleading, we next consider the additional arguments. TTUHSC does not dispute that it actually used tangible personal property during the relevant care and treatment. On that score, it points out that Oaxaca herself did not allege that a temporary catheter should not have been used at all. The parties agree, then, that a catheter was used during the relevant medical treatment. For immunity to be waived, however, § 101.021(2) requires that the alleged injury must be proximately caused by the condition or use of tangible property. TEX. CIV. PRAC. & REM. CODE ANN. § 101.021(2). Moreover, the Supreme Court of Texas instructs that we must look to the true nature of the dispute to determine whether a plaintiff has stated a claim for use of tangible personal property. *Dallas Cnty. Mental Health & Mental Retardation v. Bossley*, 968 S.W.2d 339, 343 (Tex. 1998). Here, the crux of the parties' dispute centers on the true nature of the claim.

TTUHSC contends, however, that the undisputed evidence demonstrates the temporary dialysis catheter was used properly when initially placed. To that extent, it asserts Oaxaca's actual claims are not of a use or misuse of tangible property, but instead, of a failure to medically determine when the catheter should have been removed or otherwise a failure to take action to do so. Specifically, it characterizes the true nature of the claims as alleging a failure to monitor and diagnose a catheter infection, a failure to remove an allegedly infected catheter, and a failure to treat an alleged infection.

10

To support its position, TTUHSC cites to numerous cases from differing courts of appeals. First, TTUHSC cites to cases involving a defendant's misuse of information produced by tangible personal property asserting such claims fail to waive immunity. *See Redden v. Denton County*, 335 S.W.3d 743, 751 (Tex. App.—Fort Worth 2011, no pet.) (holding a misinterpretation of electrocardiogram machine, which ultimately lead to claimant's death, was not a use or misuse of tangible property); *Kelso v. Gonzales Healthcare Sys.*, 136 S.W.3d 377, 382 (Tex. App.—Corpus Christi 2004, no pet.) (holding delayed treatment of a heart condition based on a misuse of information from an electrocardiogram machine was not a "use" of tangible property). We conclude, however, that these cases are distinguishable. Oaxaca's claims are not alleging nonuse and do not allege that physicians of TTUHSC misinterpreted or otherwise misused any information leading to his injury. In fact, the tangible property at issue—a nontunneled temporary dialysis catheter—was not itself capable of producing information at all.

Second, TTUHSC cites to cases involving either a failure to act or an erroneous medical decision, which neither waive immunity. *See Kamel v. Univ. of Texas Health Sci. Ctr. at Houston*, 333 S.W.3d 676, 686 (Tex. App.—Houston [1st Dist.] 2010, pet. denied) (holding allegations that doctors negligently used tangible personal property—scalpel, scissors, and other surgical equipment—to injure and remove plaintiff's testicle after wrongly determining it was cancerous were not sufficient to establish waiver because there was no allegation the surgical instruments were themselves defective or negligently used but rather that the doctor made an erroneous medical judgment in determining the testicle needed to be removed); *Arnold v. Univ. of Texas Sw. Med. Ctr. at Dallas*, 279 S.W.3d 464, 470 (Tex. App.—Dallas 2009, no pet.) (holding the allegations that identified a breast implant as a piece of tangible personal property used during the procedure did not waive immunity when the true substance of plaintiff's claim was that the doctor

11

miscalculated or misdiagnosed the necessary size of replacement breast implants, and such was not a claim for the negligent use of tangible personal property); *Somervell Cnty. Healthcare Auth. v. Sanders*, 169 S.W.3d 724, 726 (Tex. App.—Waco 2005, no pet.) (holding allegations that a nursing home was negligent in failing to address plaintiff's high risk for falls and negligently prescribing medication that worsened plaintiff's condition failed to state a claim involving the condition or use of tangible property); *Univ. of Texas Med. Branch v. Thompson*, No. 14-06-00014-CV, 2006 WL 1675401, at *3–4 (Tex. App.—Houston [14th Dist.] June 20, 2006, no pet.) (mem. op.) (concluding allegations of improperly using medical diagnostic tools, including an x-ray, did not waive immunity because none of the property involved in treatment actually caused harm). We conclude, however, that these cases all found that the true nature of the claims were not derived from alleged negligent use of property, but rather, they arose from errors of medical judgment which only then prompted the non-negligent use of property.

Third and lastly, TTUHSC points to a case involving a claim alleging that physicians had failed to develop adequate procedures for tissue storage, resulting in the loss of a bone flap taken from plaintiff's skull. *See Univ. of Texas Med. Branch at Galveston v. Tatum*, 389 S.W.3d 457, 460 (Tex. App.—Houston [1st Dist.] 2012, no pet.). But there, the court held the claim in fact alleged a failure to use tangible property, or a nonuse of property, which does not waive immunity. *Id.* at 463. TTUHSC asserts Oaxaca's allegations are similar because the undisputed evidence shows the temporary catheter was used properly when it was initially placed, and the true allegation of a failure to remove an infected catheter does not actually involve a use of tangible property.

TTUHSC points to the deposition of two of its doctors who treated Oaxaca, Angelica Nunez, M.D., and Pedro Blandon, M.D. Dr. Nunez testified that she did not think the catheter was infected when she viewed it and it never showed signs of any concern. Dr. Blandon testified that

12

Oaxaca showed no signs of sepsis at the time of his discharge from UMC. He also testified that the use of a temporary catheter was proper and their decision to replace it with another temporary catheter prior to Oaxaca's discharge was also proper. TTUHSC argues the testimony of both doctors demonstrate that Oaxaca's claims are ones of negligent medical judgment, which cannot support a waiver of immunity.

We disagree with TTUHSC's characterization of Oaxaca's claims and its reliance on the cited authorities. More on point to the circumstances are *McKenzie*, 578 S.W.3d at 511 and *Univ. of Texas Sw. Med. Ctr. v. Rhoades*, 605 S.W.3d 853, 860 (Tex. App.—Dallas 2020, pet. denied). First, in *McKenzie*, the plaintiff alleged the hospital was negligent in "misusing a fluid, tangible physical property, for chemotherapy under circumstances where it was reasonably obvious that it was not the appropriate fluid and posed a significant risk of serious harm to the patient, including the exact condition from which [the patient] died." *McKenzie*, 578 S.W.3d at 510. The hospital argued that because the carrier agent was administered properly during surgery, the crux of plaintiff's claim was that of negligent medical judgment for which immunity was not waived. *Id.* at 509.

Second, in *McKenzie*, the Supreme Court of Texas reiterated that a complaint about medical judgment, without more, is insufficient to waive immunity. *Id.* at 515. Rejecting the plaintiff's claim, the Court found it lacking as it did not allege that the carrier agent was used improperly, but rather, that it should have never been used at all. *Id.* Given the full nature of the claim, however, *McKenzie* found the allegations involved more than mere medical judgment. *Id.* The Court explained, "it was the use itself that caused the injury, and the fact that the property was administered properly or that the use of the [carrier agent] was preceded by medical judgment does not affect the analysis." *Id.* Thus, although the use of the carrier agent had begun due to medical

13

judgment, the Court found that judgment still "led to the use of property that was allegedly improper under the circumstances and caused harm." *Id.*

In *Rhoades*, the undisputed evidence established that one surgical sponge could not be accounted for after a breast reconstruction surgery. *Rhoades*, 605 S.W.3d at 855. The surgical staff searched visually for the sponge as well as by use of a mobile x-ray machine. *Id.* at 856. Views were taken of the patient's chest and abdomen area, but not her pelvic area. *Id.* After hours of searching, one of the doctors called off the search, concluding the sponge count had not been correctly performed. *Id.* Eventually, post-operative x-rays revealed the sponge had been left in the patient's pelvic area, requiring a second surgery for its retrieval. *Id.* Due to other issues that later developed, the patient had four additional surgeries. *Id.*

In the suit that followed, the plaintiff alleged the second surgery to retrieve the sponge had caused her post-operative complications. *Id.* Plaintiff's claim alleged the physicians had negligently failed to remove a surgical sponge and failed in ensuring that "an appropriate intraoperative x-ray was taken delineating the entire surgical field." *Id.* at 859. Although no allegation claimed that the sponge or x-ray machine were used in a manner in which they were not designed or intended, the claims otherwise alleged the hospital negligently used tangible personal property in such a way that it failed to prevent retention of the sponge in the patient's body, which caused harm. *Id.*

Asserting a plea to the jurisdiction, the defendant argued that plaintiff's claims actually arose from an alleged negligent medical judgment in calling off the search for the missing sponge and a negligent interpretation of the x-ray films, neither of which waived its immunity. *Id.* at 859, 862. Rejecting that argument, the Fifth Court of Appeals held that the doctor's erroneous medical decision to call off the search for the missing sponge merely followed the allegedly negligent use

of the sponge, and that singular decision did not otherwise transform the misuse of such property into an allegation of mere medical judgment. *Id.* at 861. Although bound up with medical judgment, the court found the claim had further alleged the surgical staff had misused the x-ray equipment by not initially scanning the entire surgical field when the equipment functioned properly in producing accurate film of the area imaged. *Id.* at 865. Given the full extent of the claim, the court held it sufficiently pleaded, and the jurisdictional evidence supported, the allegation that the hospital negligently misused the sponge and negligently failed to use the involved x-ray machine. *Id.* at 861, 865.

TTUHSC attempts to distinguish *McKenzie* and *Rhoades* by asserting those cases hold that a TTCA waiver "require[s] the negligent use or [misuse] of medical equipment [to] occur at the inception of its use or before the alleged errant medical judgment." Relying on its view of those cases, TTUHSC asserts that because the catheter at issue here was initially used properly, everything occurring after its initial placement resulted solely from medical judgment, if at all. Accordingly, TTUHSC contends that Oaxaca brings allegations limited by their nature to the mere use of medical judgment. We disagree.

Rather, Oaxaca's live pleading alleged the negligent use or misuse of the temporary dialysis catheter directly caused Oaxaca's injury and harm, contending it was the source of the resulting infection. As *McKenzie* explained, "[t]he [TTCA] does not narrow the definition of use to encompass only the manner of administration, nor does it limit the scope of the waiver to 'use' that is not preceded by medical judgment." *McKenzie*, 578 S.W.3d at 513–14. And there, the Supreme Court further noted that any "suggestion that 'use' of property transforms into medical judgment so long as the property is administered correctly simply is not supported by the statute's plain language[.]" *Id.* at 514. Similar to *McKenzie* and *Rhoades*, Oaxaca alleged TTUHSC

negligently misused the temporary dialysis catheter by not removing it when there were signs of sepsis, that is, alleging the treating physicians kept the temporary catheter in place more than two weeks, failing to replace it when necessary to prevent sepsis.

Thus, Oaxaca sufficiently alleged that an error in judgment in not removing the catheter earlier, or in not replacing it with another temporary catheter, occurred *after* the alleged negligent use of such tangible property. Oaxaca's pleadings clearly allege injury by the use or misuse of tangible property, that is, the catheter. *McKenzie*, 578 S.W.3d at 518 (holding allegations that hospital used property improperly under the circumstances causing harm was sufficient to waive immunity under § 101.021(2)). Construing the pleadings liberally and in favor of Oaxaca's intent, as we must, we conclude she has pleaded sufficient facts to bring a claim under the TTCA's waiver of immunity. TEX. CIV. PRAC. & REM. CODE ANN. § 101.021(2).

Furthermore, Dr. Nunez's and Dr. Blandon's testimony asserting they believed their choices were properly made goes to the ultimate question of liability, which we give no opinion at this point in the litigation. Whether the doctors complied with the applicable standard of care is not relevant to our analysis today. The question is, looking at the gravamen of Oaxaca's complaint, whether a fact issue exists regarding whether Oaxaca's injury was proximately caused by TTUHSC's use of tangible personal property. *See McKenzie*, 578 S.W.3d at 518. TTUHSC failed to establish its actions did not constitute a use of tangible property. *Id.* at 512. Upon consideration of the pleadings, the assertions of fact, and the evidence presented, we hold the trial court's denial of TTUHSC's plea to the jurisdiction to be proper. *Miranda*, 133 S.W.3d at 227; *McKenzie*, 578 S.W.3d at 518.

We overrule TTUHSC's sole issue.

16

## III. CONCLUSION

We affirm the trial court's denial of TTUHSC's plea to the jurisdiction and motion to dismiss.

GINA M. PALAFOX, Justice

June 22, 2023

Before Rodriguez, C.J., Palafox, and Soto, JJ.